UNITED STATES of America,
Plaintiff–Appellee,

v.

Pressie HUGHES, Jr.,
Defendant–Appellant.

No. 80–5359
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit B

Jan. 27, 1981.

Pressie Hughes, Jr., pro se.

Elizabeth E. Hoyt, Asst. U. S. Atty., Jacksonville, Fla., for plaintiff–appellee.

Before RONEY, FRANK M. JOHNSON, Jr. and HENDERSON, Circuit Judges.

FRANK M. JOHNSON, Jr., Circuit Judge:

Appellant Pressie Hughes, Jr., after having waived indictment by grand jury and pleading not guilty to all three counts of an information filed against him charging him with making, publishing and unlawful possession of a stolen United States Treasury check in violation of Sections 495 and 1708, Title 18, U.S.C., was convicted on all counts. Hughes was represented by his retained counsel and subsequent to the convictions by the jury Hughes was sentenced to a term of ten years on Counts 1 and 2 and five years on Count 3, all to run concurrently. From the jury verdict and the sentences imposed thereon, an appeal was taken, Hughes still being represented by his

retained counsel; the convictions were affirmed in *United States v. Hughes*, 418 F.2d 1222 (5th Cir. 1969). In September, 1975, seven years after the convictions, Hughes moved for a vacation of judgment and sentence pursuant to 28 U.S.C. § 2255. This motion was denied and this appeal follows. The sole issue in this case is whether the district court's finding that Hughes' privately retained counsel rendered effective assistance to Hughes was clearly erroneous.

The government's case is based on forging the endorsement of, unlawfully possessing with intent to defraud, and uttering United States Treasury check No. 93,353,-835 dated July 1, 1967, which was mailed to a Raymond H. Gallian, the designated payee at an address from which Gallian had recently moved. Mr. Gallian testified that he never received the subject check. On July 6, 1967, a six–horsepower motor was purchased from the Trout River Marina in Jacksonville, Florida, and paid for by Mr. Gallian's treasury check. Three witnesses who were employees at the Trout River Marina positively identified Hughes as the individual who had endorsed the check in payment for the motor. Hughes was apprehended on August 18, 1967, when he attempted to sell the motor at another Jacksonville area marina. Two persons who were working at the second marina, Isle of Palms Marina, on August 18th identified Hughes as the individual who attempted to sell the motor. Employees at the second marina recognized from the motor's serial number that it was stolen and delayed Hughes by negotiating to purchase the motor while authorities were summoned. An agent of the United States Secret Service arrested Hughes on August 18th at the Isle of Palms Marina.

Hughes' defense at trial was that he was an innocent intermediary. He testified that the motor was left with him as security for payment for some automobile repairs he had done. Hughes also testified at trial that he was on vacation in Douglas, Geor-

gia, on July 6, 1967, the date the motor was purchased, and the check was uttered at the Trout River Marina. Hughes further testified that he had a bill of sale evidencing the transfer of the motor to him and further that when he attempted to sell the motor to the Isle of Palms Marina he was given a check for $100 and a receipt both with his true name on them but that the arresting officers took them at the time of his arrest. None of these documents were offered in evidence.

As a basis for the contention that his Sixth Amendment rights were violated by reason of his ineffective attorney, Hughes claims that his attorney did not move for discovery of the bill of sale, the receipt, and the check which Hughes claims would show that he obtained the motor in his own name and that he attempted to sell it in his own name rather than the name indicated on the treasury check. In response to Hughes' claims as made in the Section 2255 motion, the government filed affidavits of the arresting officer, the prosecuting attorney and appellant's trial attorney. The arresting officer swore that he did not seize any documents indicating how Hughes obtained the motor. Hughes' trial attorney swore that he was never told of the existence of any documents reflecting how Hughes obtained the motor and that he followed all leads of which he was aware in presenting Hughes' defense. The prosecuting attorney swore that he did not suppress any documents which would have indicated that Hughes was innocent.

The district court, without conducting a hearing, found appellant's ineffective assistance of counsel contention without merit. In so finding the district court relied on the affidavits submitted by the government and the evidence presented upon the trial of the case resulting in Hughes' conviction.[1]

In a motion filed with the district court to reconsider the denial of his Section 2255 motion, Hughes alleged as new grounds supporting his counsel's ineffectiveness the

---

1. The district judge who denied the Section 2255 motion was the same judge that presided at the trial.

fact that his attorney made no attempt to call alibi witnesses to prove that he was in Georgia, not Florida, at the time the check was given for the motor. Thus, Hughes now argues that his counsel was ineffective both because of his failure to move for discovery of the documents and because of his failure to locate and subpoena alibi witnesses.

The Sixth Amendment guarantees a defendant in a federal criminal trial the right to "counsel reasonably likely to render and rendering reasonably effective assistance." *Mackenna v. Ellis*, 280 F.2d 592, 599 (5th Cir. 1960), *modified*, 289 F.2d 928, *cert. denied*, 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961). The recent Supreme Court decision, *Cuyler v. Sullivan*, 446 U.S. 335, 345 and n. 9, 100 S.Ct. 1708, 1716 and n. 9, 64 L.Ed.2d 333, 344 and n. 9 (1980), makes clear that the standard does not vary where the defendant retains his own attorney.

A motion to vacate judgment and sentence filed pursuant to 28 U.S.C. § 2255 does not automatically mandate a hearing. When the files and records of a case make manifest the lack of merit of a Section 2255 claim, the trial court is not required to hold an evidentiary hearing. *Sosa v. United States*, 550 F.2d 244, 250 (5th Cir. 1977). With regard to resolution of factual issues in a Section 2255 case, this Court has held that contested fact issues ordinarily may not be decided on affidavits alone, unless the affidavits are supported by other evidence in the record. *Owens v. United States*, 551 F.2d 1053, 1054 (5th Cir. 1977), *cert. denied*, 434 U.S. 848, 98 S.Ct. 155, 54 L.Ed.2d 115 (1977).

Based upon a close examination of the entire record in this case we conclude that the district court's finding that Hughes' retained counsel rendered reasonably effective legal assistance to Hughes was not clearly erroneous.

First, it was not clear error for the district judge to reject Hughes' argument that his retained counsel was ineffective by failing to move for discovery of a "bill of sale" supposedly made out to the defendant reflecting that the outboard motor had been sold to him by a customer at his garage. The defense counsel's affidavit stated that he had heard no mention of this document and the Secret Service Agent's affidavit stated that no "bill of sale" was found at the time of Hughes' arrest. These affidavits by the defense counsel and the arresting officer are fully supported by the evidence presented in the trial record. The trial record reflects that the office manager and bookkeeper for the Trout River Marina testified that the bill of sale and the registered service card were made out in the name of the payee of the check–Raymond H. Gallian–and were delivered, along with the motor, to Pressie Hughes who represented himself to be Raymond H. Gallian and in the bookkeeper's presence presented and endorsed the check as Raymond H. Gallian. As a matter of fact the defendant testified on the trial of the case as follows:

Q: And your friend Butler just left the motor there, is that right?

A: Well, he purchased his car from me. I fixed his automatic transmission. I put a valve job on it. His payment was $150.00. He didn't have all the money. This is the purpose–this is how I got the motor, collateral. He's supposed to pick this up.

Q: I see.

A: This is how I got the motor.

Q: Did he ever pick it up, sir?

A: No, he didn't.[2]

This testimony was consistent with the defense that was presented in the case. In view of this testimony and the theory of the defense it is no wonder that the defense counsel failed to file a motion asking for production of the bill of sale from "the customer" to Hughes. It is our view that this testimony completely undermines the merit of this part of Hughes' present claim.

A second "bill of sale" or "receipt" is one which Hughes contends was made out by him to the Isle of Palms Marina at the time

---

**2.** Page 143 of trial transcript.

of his negotiated sale of the motor. The trial record supports the theory that no such bill of sale was ever in existence. On this point the owner of the Isle of Palms Marina testified:

Q: Sir, will you state any conversation that you had with the defendant when he appeared at your place on or about August 18, 1967?

A: He had a 6 horsepower Johnson that was nearly new and it gave all appearances of a new motor, that he wished to dispose of and we discussed price back and forth and it was a motor as far as I could see at that time was available to purchase.

Q: All right, sir, did you complete the sale, sir?

A: No, I did not.

Q: Why not, sir?

A: Well, I had been pre–warned that a motor of that serial number, to be on the lookout for and to notify the authorities in case it showed up.[3]

Further, the owner of the Isle of Palms Marina testified regarding the attempted sale of the motor by Hughes to him as follows:

Q: Did you ask him where it came from or where he got it?

A: Yes, sir.

Q: What did he reply to that?

A: He told me Trout River Marina.

Q: He told you Trout River Marina?

A: I'm pretty sure that's correct.

Q: And what name, if any, did he give you?

A: I don't remember the name.

Q: Do you remember whether he gave you any other name other than Pressie Hughes?

A: Yes, there was another name and he had a bill of sale for it made out in this other name but I do not remember what it was.

Q: A bill of sale to the motor?

A: Yes.

Q: Made out to the other name?

A: Yes.

Q: You don't remember what the other name was?

A: No, sir, I don't.

Q: It was not in fact Pressie Hughes?

A: I'm sure that it wasn't, no, it wasn't Pressie Hughes.

Q: All right, and did you take the bill of sale?

A: I looked at it but I did not keep it.

Q: Did you notice the date or anything about it?

A: I'm sure that I did at the time but I don't remember what the exact date was.

Q: And then as I understand, you went and called the authorities?

A: I didn't call them personally.

Q: Asked–

A: My office.

Q: Your office called and they came out and the defendant was taken into custody at that time?

A: Yes, sir.[4]

Thus the affidavits of the Secret Service agents and the prosecuting attorney to the effect that they did not suppress a $100 check or a bill of sale that Hughes now claims was made payable to him at the Isle of Palms Marina at the time of his attempted sale of the motor are substantiated by the trial record.

■ Hughes' assertion that his retained counsel failed to sufficiently cross–examine Mr. Read is completely without foundation. The trial record supports the finding of the district judge that defense counsel did vigorously cross–examine all government witnesses. Furthermore, a defense counsel's trial strategy, which would include his asking or refraining from asking certain questions of witnesses, does not reach constitutional proportions. *See, e. g., Lovett v. State of Florida*, 627 F.2d 706 (5th Cir.

---

**3.** Trial record pages 104 and 105.

**4.** Pages 108 and 109 of the trial record.

1980); *United States v. Johnson,* 615 F.2d 1125, 1127 (5th Cir. 1980).

Hughes' final two claims in support of his contention of ineffective assistance of counsel are based on the failure of his defense counsel to subpoena defense alibi witnesses that would show he was in Georgia and not Jacksonville, Florida, when the check was negotiated for the purchase of the motor [5] and the wife of Mr. Read, the owner of the Isle of Palms Marina, who he claims could corroborate his testimony at trial concerning the existence of a $100 check made out to him. Defense counsel's failure to call certain witnesses is not sufficient grounds for a Sixth Amendment claim. *Buckelew v. United States,* 575 F.2d 515, 521 (5th Cir. 1978). "[C]ounsel for a criminal defendant is not required to pursue every path until it bears fruit or until all conceivable hope withers." *Lovett v. State of Florida, supra,* 627 F.2d at 708.

Thus, in the instant case, the trial court's determination that Hughes had not been deprived of his Sixth Amendment right to the reasonably effective assistance of counsel was a factual determination which should be reversed only if clearly erroneous under Rule 52(a). *Washington v. Smith,* 417 F.2d 301 (5th Cir. 1969); Fed.R. Civ.P., Rule 52(a) (1980). Finding the factual determinations as made by the district court not clearly erroneous, the judgment of the district court in denying Hughes' motion for a vacation of judgment and sentence pursuant to 28 U.S.C. § 2255 is AFFIRMED.

---

**5.** It is interesting that in *Hughes v. Hopper* 629 F.2d 1036 at 1039 (5th Cir. 1980), Hughes, who had been convicted in the Georgia state courts for armed robbery, and was prosecuting a ha-beas case in the federal courts (after denial in state courts) contended, as an alibi, that at the time of the robbery he was in Jacksonville, Florida, and not in Georgia.