Willie Fred BATY, Petitioner-Appellant,

v.

Charles R. BALKCOM, Warden, The Attorney General of the State of Georgia, Respondents-Appellees.

No. 80–7668.

United States Court of Appeals,
Fifth Circuit.*
Unit B

Nov. 16, 1981.

Rehearing and Rehearing En Banc Denied
Dec. 17, 1981.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Grace E. Evans, Asst. Federal Public Defender, Augusta, Ga., for petitioner-appellant.

Susan V. Boleyn, Asst. Atty. Gen., Atlanta, Ga., M. Carr Ferguson, Asst. Atty. Gen., Michael L. Paup, Chief App. Section, John F. Murray, Acting Asst. Atty. Gen., Tax Division, Dept. of Justice, Washington, D. C., for respondents-appellees.

Before FAY, FRANK M. JOHNSON, Jr. and THOMAS A. CLARK, Circuit Judges.

FRANK M. JOHNSON, Jr., Circuit Judge:

Willie Fred Baty appeals the district court's denial of his habeas corpus petition, 494 F.Supp. 960, claiming that he was denied at his original trial the right to effective assistance of counsel guaranteed by the Sixth Amendment.[1] We reverse.

## I.

Baty and Leroy Miller, arrested for the armed robbery of a grocery store, each developed a different story, contradicting that of the other defendant, in preparation for his defense at trial. Miller asserted that he was a mere hitchhiker picked up by Baty, that he had nothing to do with the robbery, and that he did not have a gun during a gunfight with police following the robbery. In his trial testimony, Miller also placed Baty in the grocery store at the time of the robbery. Baty, on the other hand, maintained that the state had to prove that he was at the store during the robbery and that he also did not have a gun. Had he testified he would have implicated Miller in the robbery. Since each defendant would indicate that the other defendant was involved in the robbery, and since each, by asserting that he did not possess the gun introduced at trial, would necessarily imply that the other defendant had the gun,[2] testimony by either would be inconsistent with the other defendant's assertion of innocence.

Shortly after their arrest both defendants had retained William D. Smith as counsel. Smith, concluding that the contradictory stories caused a conflict of interest so severe as to render him unable to defend Baty and Miller jointly, filed a motion for severance and asked another attorney, Charles M. Taylor II, to be on "standby" in the event the court denied the motion. On the day before the trial, the court did deny the motion. Smith announced at the begin-

---

1. Through the Fourteenth Amendment, the Sixth Amendment has been made applicable to state cases such as that in which Baty initially was convicted. See, e. g., Gideon v. Wain- wright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

2. The police recovered two guns, but only one was allowed into evidence.

ning of trial that Taylor would be counsel for Baty.

Taylor had been researching legal aspects of the case in Smith's employ [3] since shortly after defendants' arrest. Aside from a visit to the scene of the crime, Taylor's familiarity with factual aspects of the case was limited to information gleaned from discussions with Smith. He interviewed no witnesses, could not recall having read a transcript of the preliminary hearing, and only talked to Baty for twenty or thirty minutes on the morning of trial. Although he later indicated that he would have been better prepared for Baty's defense had he interviewed some witnesses, Taylor did not move for a continuance.

Smith and Taylor worked closely together at trial. Trial tactics and defense were a "joint venture" and decisions as to whether Baty and Miller would testify were made by both defendants and both counsel.[4] Smith argued a motion for judgment of acquittal on behalf of Baty as well as of Miller; Smith also rested the defense of both defendants. Taylor made no opening statement on Baty's behalf. Although a major portion of Baty's defense would rely on the absence of any proof that Baty had a gun, Taylor was unaware that Miller's testimony would implicate Baty in the crime or that Miller would imply that Baty had a gun. Despite the effect of Miller's testimony on Baty's story, Taylor did not cross-examine him.

The jury found Baty guilty of armed robbery. At sentencing, after Taylor stated that he had nothing to say on behalf of his client and that his client also had nothing to say, the court imposed a life sentence. Baty, with new counsel, filed a motion for a new trial raising the issues of ineffective assistance of counsel and conflict of interest. The superior court denied the motion. An appeal raising the same issues also was unsuccessful. *Baty v. State*, 147 Ga.App. 277, 248 S.E.2d 503, 505–06 (1978), *cert. denied*, No. 56170 (Ga.S.Ct. November 7, 1978).

Having exhausted his state remedies, Baty filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C.A. § 2254, in federal district court. Baty first charged that he received ineffective assistance of counsel because counsel did not speak to him until the morning of trial, conducted no independent investigation, interviewed no defense witnesses, failed to file a motion for continuance, and decided against having Baty take the stand without talking with him. Second, he argued that, as a matter of law, he was denied effective representation because of a conflict of interest in counsel's representing both him and Miller.

The district court denied Baty's petition. Discussion of the case with Smith, the court concluded, allowed Taylor to be prepared adequately despite the absence of other preparation or of communication with Baty; being adequately prepared, it was not ineffective assistance for counsel not to have filed a motion for a continuance. Decisions on trial tactics, the district court observed, could have been motivated by sound tactical reasons that the court declined to second-guess. The conflict of interest claims the district court also held to be without merit. The court found no reason evident why Smith might have favored one defendant over another before trial. In particular, the court found that there was no option of pursuing a plea agreement for one client or the other in this case. After mentioning

---

**3.** Taylor had at one time shared an office with Smith but had moved to his own office by the time of the trial. Taylor was paid by Smith from a portion of the fee Smith had received for Baty's defense and also received some money from a girlfriend of Baty.

**4.** When asked whether he had ever terminated his representation of Baty, Smith replied:

> I would say yes and no and I would have to explain this. This was a joint venture by

both Defendants, the trial tactics in the trial, and the trial defense for the Defendants was also a joint effort on both parts.

> We all conferred during the trial as to whether or not Mr. Baty would testify, whether or not Mr. Miller would testify, depending on what the State did in their case so this was a decision made by all four parties, not severing one from the other . . . .

that Taylor assumed sole representation of Baty at trial, the court held that Taylor's past obligation toward Baty's co-defendant would not have adversely affected, and might even have enhanced, his representation of Baty.[5] Finally, the court noted that under the standard of *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), Baty had to show an adverse effect of the conflict on his counsel's actions. There had, the court concluded, been no such effect.

Baty pursues on appeal his contentions that he was inadequately represented before trial, during trial, and at sentencing, and that a conflict of interest in the joint representation of him and his co-defendant rendered his trial fundamentally unfair.

## II.

■■ The standard by which to evaluate the effectiveness of counsel is well established. A defendant has a constitutional right to counsel reasonably likely to render and reasonably rendering effective assistance. *See, e. g., United States v. Burroughs*, 650 F.2d 595 (5th Cir. 1981); *Washington v. Estelle*, 648 F.2d 276 (5th Cir.

1981); *Hill v. Wainwright*, 617 F.2d 375 (5th Cir. 1980); *United States v. Alvarez*, 580 F.2d 1251 (5th Cir. 1978). Effective counsel need not, however, be errorless counsel, nor should counsel be judged ineffective solely by hindsight. *See, e. g., Washington v. Estelle, supra*; *Clark v. Blackburn*, 619 F.2d 431 (5th Cir. 1980); *Easter v. Estelle*, 609 F.2d 756 (5th Cir. 1980). The appropriate methodology for determining whether there has been effective assistance is to examine the totality of circumstances in the entire record. *See, e. g., Washington v. Estelle, supra*; *Lovett v. Florida*, 627 F.2d 706 (5th Cir. 1980); *United States v. Gray*, 565 F.2d 881 (5th Cir.), cert. denied, 435 U.S. 955, 98 S.Ct. 1587, 55 L.Ed.2d 807 (1978).[6]

■■ Inadequate preparation of counsel is one ground for finding a violation of the Sixth Amendment right to effective counsel, *see Kemp v. Leggett*, 635 F.2d 453 (5th Cir. 1981); *Gaines v. Hopper*, 575 F.2d 1147 (5th Cir. 1978). Considered in light of the above standard, the totality of circumstances in the entire record makes clear Taylor's inadequate preparation for trial and forces us to concede the merit of Baty's claim.[7]

5. The district court stated that, under 28 U.S.C.A. § 2254(d), the state court findings of fact concerning adequacy of counsel must be presumed to be correct. This statement is contrary to *Cuyler v. Sullivan*, 446 U.S. 335, 341-42, 100 S.Ct. 1708, 1714-15, 64 L.Ed.2d 333 (1980), in which the Supreme Court held that a state court's conclusion that two lawyers had not undertaken multiple representation was a mixed determination of law and fact not falling within Section 2254(d). Similarly, determinations at issue here concerning adequacy of counsel and conflicts of interest are mixed determinations of fact and law not within Section 2254(d). *See Panzavecchia v. Wainwright*, 658 F.2d 337 at 339-40 (5th Cir. 1981); *see also* note 7, *infra*.

6. This Circuit until recently held that inadequacy of privately retained counsel did not violate the Sixth Amendment unless state trial court officials had actual or constructive notice of counsel's incompetence or unless the trial was so fundamentally unfair as to violate due process. *Fitzgerald v. Estelle*, 505 F.2d 1334 (5th Cir. 1974) (en banc), cert. denied, 422 U.S. 1011, 95 S.Ct. 2636, 45 L.Ed.2d 675 (1975). The Supreme Court overturned this rule, ending the distinction between retained and appointed

counsel, in *Cuyler v. Sullivan*, 446 U.S. 335, 342-45, 100 S.Ct. 1708, 1715-16, 64 L.Ed.2d 333 (1980). *See also Perez v. Wainwright*, 640 F.2d 596 (5th Cir. 1981); *United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. 1981).

7. Our standard for review of the factual findings of the district court is that we may only overturn such findings if clearly erroneous. *United States v. Hughes*, 635 F.2d 449 (5th Cir. 1981). Our review of mixed questions of law and fact and of questions of law is much broader, allowing us to substitute our own judgment for that of the lower court. *Baker v. Metcalfe*, 633 F.2d 1198, 1201 (5th Cir.), cert. denied, 451 U.S. 974, 101 S.Ct. 2055, 68 L.Ed.2d 354 (1981). *See also Townsend v. Sain*, 372 U.S. 293, 309 n.6, 83 S.Ct. 745, 755 n.6, 9 L.Ed.2d 770 (1963) (distinguishing questions of fact, which concern "basic, primary, or historical facts", from mixed questions of fact and law, "which require the application of a legal standard to historical-fact determinations".)

Though earlier holdings may have intimated otherwise, *see Brown v. Blackburn*, 625 F.2d 35, 36-37 (5th Cir. 1980), we believe that *Cuyler v. Sullivan*, 446 U.S. 335, 341-42, 100 S.Ct. 1708, 1714-15, 64 L.Ed.2d 333 (1980), estab-

Taylor's minimal preparation for his client's trial must initially arouse our concern. As noted earlier, he conducted no investigation prior to trial, apparently did not read the transcript of the preliminary hearing, interviewed no witnesses despite conceding that some interviews might have aided his client, and communicated with his client only briefly before trial. Such minimal preparation might have sufficed had Taylor garnered the necessary background information from alternative sources. The record, however, belies any claim of sufficient information from any other sources. At the least, given Smith's self-professed conflict of interest, Taylor surely should have been skeptical about exclusive reliance on Smith as a source of information. The inadequacy of that reliance is strikingly illuminated by Taylor's ignorance of aspects of Miller's testimony that might critically have undercut his own client's defense. Further evidence of Taylor's inadequate preparation can be found in his silence through and after trial when given the opportunity to make an opening statement on Baty's behalf, to cross-examine Miller, or to speak at sentencing. Although, if considered individually, these instances of silence might perhaps be ascribed to tactical judgments into which the court need not inquire, when examined cumulatively and in the context of Taylor's scanty pretrial preparation, they reinforce our conclusion that Taylor had so little familiarity with his client's case as to violate Baty's right to effective counsel.[8]

## III.

For a conflict of interest to cause representation to fail Sixth Amendment standards, this Circuit requires that the conflict be actual, not speculative. An actual conflict exists if counsel's introduction of probative evidence or plausible arguments that would significantly benefit one defendant would damage the defense of another defendant whom the same counsel is representing. See, e. g., Turnquest v. Wainwright, 651 F.2d 331, 333 (5th Cir. 1981); United States v. Freeman, 619 F.2d 1112, 1121–22 (5th Cir. 1980), cert. denied, 450 U.S. 910, 101 S.Ct. 1348, 67 L.Ed.2d 334 (1981); Foxworth v. Wainwright, 516 F.2d 1072, 1076 (5th Cir. 1975). Once we have found an actual conflict of interest, however, we have, without further inquiry, presumed prejudice to the defendant. "It is well established that when counsel is confronted with an actual conflict of interest, prejudice must be presumed, and except under the most extraordinary circumstances, the error cannot be considered harmless." Turnquest, supra, 651 F.2d at 334; see also Johnson v. Hopper, 639 F.2d 236, 239 (5th Cir. 1981). Respondent now argues, and the district court held, that the Supreme Court altered this standard in Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).

lished that, although the determination of primary facts is subject to the clearly erroneous standard, the ultimate determination of whether those facts constitute ineffective assistance of counsel is a mixed question of fact and law. Therefore, in this case, absent a clearly erroneous determination, we defer to the district court's findings on such primary facts as determinations of what counsel did to prepare for trial or of whether there was a possibility of a plea bargain. We will, however, apply our own judgment to mixed legal and factual questions such as whether Taylor's preparation for trial, given the findings on how he prepared, was so minimal as to constitute ineffective assistance or whether Smith's continued role at trial in the defense of Baty was sufficient to constitute an actual conflict of interest.

8. We emphasize that we have no quarrel with this Court's previous holdings that failure to conduct exhaustive investigations, to discuss a case at length with a client, or to follow certain trial tactics is not necessarily a ground for reversal. See, e. g., Beckham v. Wainwright, 639 F.2d 262 (5th Cir. 1981) (tactical decisions of counsel not sign of ineffective assistance because in retrospect decisions clearly wrong); Jones v. Estelle, 622 F.2d 124 (5th Cir. 1980) (meeting client only once prior to trial not indicative of ineffective assistance; will not, with aid of hindsight, inquire into counsel's trial tactics), cert. denied, 449 U.S. 996, 101 S.Ct. 537, 66 L.Ed.2d 295 (1981); Easter v. Estelle, 609 F.2d 756 (5th Cir. 1980) (shortness of time with client not alone sufficient to show ineffective assistance); Wilkerson v. United States, 591 F.2d 1046 (5th Cir. 1979) (counsel need only conduct investigation to extent necessary).

In *Cuyler* two attorneys represented John Sullivan and two other defendants at different trials. After exhausting his state court remedies, Sullivan filed a habeas corpus petition alleging conflict of interest in the representation of all three defendants. The Third Circuit reversed a district court, holding that a criminal defendant's conviction may be reversed on "some showing of a possible conflict of interest or prejudice, however remote." *United States v. Cuyler*, 593 F.2d 512, 519 (1979) (*quoting Walker v. United States*, 422 F.2d 374, 375 (3d Cir.) (per curiam), *cert. denied*, 399 U.S. 915, 90 S.Ct. 2219, 26 L.Ed.2d 573 (1970)). The Supreme Court vacated the case and remanded it to the Court of Appeals in a decision, stating that "a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." 446 U.S. at 348, 100 S.Ct. at 1718.

The district court concluded that the Supreme Court's statement, though not requiring actual proof of prejudice, see 446 U.S. at 349–50, 100 S.Ct. at 1718–19, does mandate a showing not only of an actual conflict of interest but also of the adverse effect of that conflict on counsel's performance. Although the statement quoted above, standing alone and considered independently of the remainder of the opinion, might make plausible the district court's conclusion, we believe a close examination of the opinion as a whole indicates that the Supreme Court did not intend to establish a standard requiring proof of adverse effect on counsel in addition to proof of an actual conflict of interest.[9]

Of most importance to our conclusion is language elsewhere in the opinion. Perhaps the most lucid indication of the Court's intent in pronouncing its standard may be found in its discussion with approval of an earlier holding, *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942): "[t]he conflict [of interest] itself

demonstrated a denial of the 'right to have the effective assistance of counsel.' 315 U.S., at 76, 62 S.Ct., at 467 .... [U]ntil a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." 446 U.S. at 349–50, 100 S.Ct. at 1718–19. These statements seem to us to mandate the conclusion that the Court intended any active representation of interests that actually conflict to violate its standard. Further internal evidence of the Supreme Court's intent is available in the footnote immediately following the statement on which the district court relied in concluding that the Court required actual proof of adverse effect on counsel. That footnote cites several circuit court cases, including *Foxworth v. Wainwright*, 516 F.2d 1072 (5th Cir. 1975), in stating that "[a] substantial majority of the Courts of Appeals require defendants who contend that multiple representation violated their Sixth Amendment rights to identify an actual conflict of interest." 446 U.S., at 348 n.14, 100 S.Ct., at 1718 n.14. The implication of the footnote is that the textual statement that it supports imposes a standard no different from that of the Courts of Appeals that require proof of an actual conflict.

We also note that a standard requiring a showing of adverse effect of a conflict on counsel would be contrary to the reasoning the Court employed in *Holloway v. Arkansas*, 435 U.S. 475, 490–91, 98 S.Ct. 1173, 1181–82, 55 L.Ed.2d 426 (1978): "even with a record of the sentencing hearing available it would be difficult to judge intelligently the impact of a conflict on the attorney's representation of a client. And to assess the impact of a conflict of interest on the attorney's options, tactics, and decisions in plea negotiations would be virtually impossible."[10] Although the Court in *Holloway* was considering whether to require proof of prejudice from a conflict, not whether to

---

9. Justice Marshall, concurring in part and dissenting in part in *Cuyler*, has noted the ambiguity in the standard that the Court imposed. 446 U.S. at 358, 100 S.Ct. at 1723.

10. *See also Cuyler, supra*, 446 U.S. at 356–57, 100 S.Ct. at 1722–23 (Marshall, J., concurring in part and dissenting in part).

require adverse impact on counsel's representation, the reasoning is equally applicable to either situation. The analysis in *Holloway*, as a guide for interpreting the intent of the Court in *Cuyler*, lends support to holding that the Court did not mean to impose a standard requiring proof of adverse effect on counsel's representation.

■ We conclude that the standard imposed by the Supreme Court in *Cuyler* is met by proof of an actual conflict of interest. As a component of that proof, of course, petitioner also must show that counsel with the conflict was representing the petitioner actively. Applying that standard to the facts of this case, we find an actual conflict of interest that violated Baty's Sixth Amendment right to effective counsel. The very real nature of the conflict is evident and was acknowledged by Smith himself, perhaps the best judge of whether a conflict existed:[11] if either defendant testified at trial he would implicate the other defendant in the crime while exonerating himself. *See also* Lowenthal, "Joint Representation in Criminal Cases: A Critical Appraisal," 64 *Va.L.Rev.* 939, 946–48 (1978).

The district court nevertheless found no actual conflict in this case. First considering the situation before trial, the court held that, in the only area in which a conflict might arise, in negotiations for a plea bargain, there was no real conflict because there was no possibility for a bargain. We find the conclusion clearly erroneous, for it is flatly contradicted by the record. Both Baty and Smith testified that a plea agreement had been offered by the state. Had he not been facing a conflict of interest, Smith might have been able to negotiate a plea agreement on Baty's behalf in return for becoming a prosecution witness against Miller. The conflict of interest before trial alone would be sufficient to grant Baty's habeas petition.[12]

■ The district court also concluded that there was no conflict of interest at Baty's trial because Taylor assumed sole responsibility for Baty's defense; any conflict arising from Taylor's earlier research on behalf of both defendants would only have redounded to Baty's benefit. Again we find the district court's conclusion clearly contradicted by the record. As noted earlier, by Smith's own admission trial tactics and defense were a "joint venture" and decisions as to whether a defendant would testify were made by both counsel and both defendants. Smith argued a motion for judgment of acquittal on Baty's behalf and rested Baty's defense. Smith's representation of Baty did not end after Taylor became "lead counsel" but, rather, continued throughout the trial.[13] This continued rep-

---

**11.** "An 'attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial.' " *Holloway v. Arkansas*, 435 U.S. 475, 485, 98 S.Ct. 1173, 1178, 55 L.Ed.2d 426 (1978) (quoting *State v. Davis*, 110 Ariz. 29, 31, 514 P.2d 1025, 1027 (1973)). *See also United States v. Burroughs*, 650 F.2d 595, 598 (5th Cir. 1981).

**12.** We do not imply that there would have been no conflict of interest if there were no possibility of a plea bargain. Plea bargains are perhaps the most obvious example of the manifest effects of a conflict of interest at pretrial proceedings, *see Holloway v. Arkansas*, 435 U.S. 475, 490, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978); Lowenthal, "Joint Representation in Criminal Cases: A Critical Appraisal," 64 *Va.L. Rev.* 939, 942–43, 948–49 (1978). They need

not, however, be the only pretrial situation in which a conflict becomes manifest.

**13.** Though we previously stated our belief that a requirement of proof of adverse effect of a conflict of interest on counsel, in addition to proof of an actual conflict, was not the intent of the Court in *Cuyler*, we note that our holding would not differ even if there were a need to prove adverse effect. Taylor stated that one reason why he thought Baty should not take the stand was that he "didn't think [the defendants] could do anything but indict each other." The statement indicates that a consideration affecting the decision, a decision in which Smith admitted both counsel participated, was that Baty might implicate Miller in the crime. That concern is precisely the kind of consideration and the adverse effect feared in situations with conflicting interests.

resentation of two defendants with inconsistent stories violated Baty's Sixth Amendment right to effective counsel.[14]  We must grant his petition for relief.[15]

The judgment of the district court is REVERSED and the case is REMANDED for proceedings consistent with this opinion.

FAY, Circuit Judge, specially concurring:

While concurring in Judge Johnson's excellent opinion, I respectfully abstain from joining in his interpretation of the holding of the Supreme Court in *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).  The record in this case leaves no doubt about an actual conflict of interest and that this conflict adversely affected Taylor's performance with prejudice to Baty.  Having reached that conclusion, I am very hesitant to guess that the Supreme Court meant something it did not say.  Indeed, as I read Justice Powell's opinion, it seems clear that a defendant must demonstrate that an actual conflict of interest adversely affected his lawyer's performance and impaired his defense.

---

**14.**  We do not mean by this holding to suggest that counsel always should avoid joint representation.  Absent actual conflicting interests we see no objection to joint representation.  *See, e. g., United States v. Burroughs*, 650 F.2d 595, 598 (5th Cir. 1981); *Johnson v. Hopper*, 639 F.2d 236, 238 (5th Cir. 1979).  In some instances joint representation may even be of substantial benefit to defendants: "Joint representation is a means of insuring against reciprocal recrimination.  A common defense often gives strength against a common attack."

*Glasser v. United States*, 315 U.S. 60, 92, 62 S.Ct. 457, 475, 86 L.Ed. 680 (1942) (Frankfurter, J., dissenting).

**15.**  Baty asserts that he never waived his right to effective assistance of counsel.  Respondents do not contest the assertion, so we do not address it.

\* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.