750 So.2d 50 (1999)
Humberto HERNANDEZ, Appellant,
v.
The STATE of Florida, Appellee.
No. 99-621.
District Court of Appeal of Florida, Third District.
July 14, 1999.
Rehearing October 13, 1999.
Milton Hirsch, Miami, for appellant.
Robert A. Butterworth, Attorney General; Katherine Fernandez Rundle, State Attorney, and Angelica D. Zayas and Penny H. Brill, Assistant State Attorneys, for appellee.
Before GERSTEN, FLETCHER, and SHEVIN, JJ.
Rehearing En Banc October 13, 1999.
FLETCHER, Judge.
Humberto Hernandez was convicted and sentenced at the conclusion of a trial during which time his defense attorney was carrying on a sexual relationship with Hernandez' wife. The question is whether Hernandez is entitled to an evidentiary hearing on his post-conviction motion for a new trial, because of his attorney's conduct, notwithstanding that Hernandez has not alleged any concrete act demonstrating that his attorney's performance in the trial court fell below the standard of competent counsel or was influenced by the relationship.[1] Our conclusion is that Hernandez is entitled to an evidentiary hearing for the reasons that follow.
*51 Hernandez was a City of Miami commissioner when he was charged by an information with one felony count of fabricating physical evidence, in violation of section 918.13(1)(b), Florida Statutes (1997); one misdemeanor count of conspiracy to fabricate physical evidence, in violation of section 918.13(1)(b) and section 777.04, Florida Statutes (1997); and one misdemeanor count of accessory after the fact, in violation of section 777.03, Florida Statutes (1997), all charges relating to an election in the City of Miami. The jury trial began on August 3, 1998, Hernandez being represented by Jose Quinon, known in the community for his abilities as a criminal defense attorney. On August 14, 1998, the jury found Hernandez not guilty on the felony of fabricating physical evidence and not guilty on the conspiracy misdemeanor. The jury did convict him of the misdemeanor of accessory after the fact. On August 19, 1998, he was adjudicated guilty and sentenced to serve 364 days in the county jail.
Two months later, on October 24, 1998, an article appeared in The Miami Herald in which Hernandez' wife, Esther, admitted to having a sexual relationship with Hernandez' attorney, which relationship began on the eve of jury selection and continued throughout and beyond the trial. Thus Quinon counseled Hernandez as to all aspects of the trial and made those countless decisions that attorneys must make during jury trialsall the while knowing that when the day was done he would rise from his seat next to Hernandez at the defense table, say goodnight to his client, and then perhaps retreat from court to Esther Hernandez and their sexual relationship.
Hernandez filed a motion for post-conviction relief, contending (1) that, because of an actual conflict of interest between him and his attorney, he was deprived of due process under Article I, section 9, Florida Constitution, or the Fifth and Fourteenth Amendments to the United States Constitution; and (2) that he was deprived of his right to assistance of counsel under Article I, section 16, Florida Constitution or the Sixth Amendment to the United States Constitution. The State responded, contending that Hernandez was not deprived of due process as there was no actual conflict of interest; the actions were those of Hernandez' privately retained attorney and not the actions of the State, the court, the jury, or any other agent of the state; and Hernandez made no attempt to demonstrate that his attorney's actual performance fell below the standard required for competence, or that his attorney's performance was in any way influenced by the illicit relationship. The State also denied that Hernandez was deprived of his right to counsel under Article I, section 16, Florida Constitution or the Sixth Amendment to the United States Constitution, as Hernandez did not show that, because of his attorney's illicit relationship with Esther, his attorney's actions in representing him were either deficient, prejudicial, or had an adverse impact under the standards of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), or Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).[2]
When presented with the motion for post-conviction relief, the trial judge, in a very difficult situation, there being precious little precedent to guide him,[3] was of the opinion, contrary to the State's position, *52 that "common sense must acknowledge the existence of an actual conflict." The trial judge is not alone in reaching such a conclusion. In one of the very few cases dealing with this specific situation, People v. Singer, 226 Cal.App.3d 23, 275 Cal.Rptr. 911, 921 (1990), the California First District Court of Appeal stated:
"There appears to be no direct precedent holding that an affair with a client's spouse raises a conflict of interest. However, such a conclusion is inescapable."
The court went on to observe, 275 Cal. Rptr. at 921:
"Just as with the sexual-romantic relationship in Jackson[[4]] between defense counsel and the prosecutor, the relationship here between defense counsel and defendant's wife deprived defendant of his constitutional right to the `undivided loyalty and effort' of his attorney. [cite omitted]. The validity of our adversarial system depends upon the guaranty of this `undivided loyalty and effort' for every criminal defendant. Given the instant facts, a defense attorney, in the extreme, might be influenced to see his client convicted and imprisoned so that the affair can continue or remain undiscovered."
We agree that there was a conflict of interest because of the affair.
Conflicts of interest between attorneys and clients are abhorred in Florida and throughout the United States. In United States v. Urbana, 770 F.Supp. 1552, 1553 (S.D.Fla.1991), Chief Judge Davis eloquently stated the reasons why:
"In the face of accusation by the people, an accused has but one person in whom he can confide, his counsel, whose allegiance shall be undivided, his trust uncompromising, his efforts tireless. Immersed in proceedings far too complex for the unacquainted, the accused blindly places faith in his attorney to protect him at every turn."
Quiñon's having a secret sexual relationship with Hernandez' wife most certainly did not meet the standards of undivided allegiance and uncompromising trust. As to tireless efforts, there lies the rub, as we shall shortly discuss.
Notwithstanding the conflict of interest between Hernandez and Quinon, the trial court declined to hold an evidentiary hearing on the motion for post-conviction relief as the motion did not allege any prejudice or adverse impact on Hernandez that entitled him to relief. In other words, the trial court ruled that Hernandez had to allege and prove that, because of the illicit affair, Quinon's trial performance was reduced to some unacceptable level, possibly resulting in the misdemeanor conviction. And, as the State points out, Hernandez was acquitted of the felony charge and of one of the two misdemeanor charges. According to the State then, Quinon's efforts, if not tireless, were sufficiently effective.
Strickland, relied on by the State, requires that a defendant show (1) his attorney's deficient performance; and (2) a reasonable probability that but for the attorney's deficient performance the result of the proceeding would have been different. The State's reliance is misplaced as Strickland did not involve conflict of interest, but involved entirely different matters, i.e., assertions that defense counsel was ineffective because he failed to move for a continuance, failed to present a psychiatric report, etc. See Strickland, 466 U.S. at 675-76, 104 S.Ct. 2052.
Cuyler v. Sullivan, however, did involve a conflict of interest, though not one arising from an illicit sexual relationship. The Cuyler court held under its circumstances that in order to demonstrate a violation of his Sixth Amendment rights a defendant must establish that an actual conflict of interest adversely affected his attorney's performance. Hernandez contends that Cuyler does not require that prejudice be alleged or proven in order to entitle him to *53 a new trial, relying in part on this court's conclusion from its prior analysis of Cuyler. See Washington v. State, 419 So.2d 1100, 1100-01, 1103 n. 2 (Fla. 3d DCA 1982), wherein this court stated:
"[T]he only arguable ground for reversal is that the record reveals that counsel for these defendants had an actual conflict of interest, so that either or both of them was prejudiced by the failure of the court, sua sponte, to appoint a separate lawyer for each.... Cuyler v. Sullivan,...
[FN2] An actual conflict of interest is, ipso facto, prejudicial. The language in Cuyler v. Sullivan, 446 U.S. at 348, 100 S.Ct. at 1718, `a defendant ... must demonstrate that an actual conflict of interest adversely affected his lawyer's performance,' has not been read to mean that a defendant must show prejudice beyond actual conflict, e.g., that the result would have been otherwise. See United States v. Benavidez, 664 F.2d 1255 (5th Cir.1982); Baty v. Balkcom, 661 F.2d 391 (5th Cir.1981)." (emphasis supplied)
In United States v. Benavidez, cited in the above quotation, the Fifth Circuit Court of Appeals stated, 664 F.2d at 1259:
"`In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance.' Cuyler v. Sullivan, 446 U.S. at 348, 100 S.Ct. at 1718. The defendant does not have to demonstrate prejudice from the joint representation; but he must `show ( )[sic] that his counsel actively represented conflicting interests.' "
The court in Baty v. Balkcom, 661 F.2d at 395 stated:
"Once we have found an actual conflict of interest, however, we have, without further inquiry presumed prejudice to the defendant."
Holding a significant place in our conclusion that prejudice or actual harm need not be proven is practical reasoning: it would be virtually impossible in most cases, as here, to prove concrete facts that demonstrate that the defense attorney's efforts were less than those demanded by the case. Just as a dishonest basketball player "shaves" points so that the point spread is such as to win a placed bet for him or his associates, an attorney can shave his efforts, seeking to assure at least a partial loss for his client in order to continue his affair with his client's wife. It is difficult to prove point shaving. It is even more difficult, if not generally impossible, to demonstrate the legal equivalent.
We also note that reduced efforts by defense counsel may not be deliberate. They may be unintended results. Sitting next to his client, day after day at trial, knowing he has betrayed his client, knowing he is going to do so again, surely would be a psychological burden, difficult to carry, particularly throughout a hotly contested trial. The impact of this conscious or unconscious "point shaving" could go unnoticed, or dismissed as a choice of trial tactics. But the attorney's efforts would be far less than the tirelessness mandated by the attorney-client relationship, as expressed in United States v. Urbana.
We cannot reach into the mind of Hernandez' defense counsel in order to determine what he did or did not think and do, but we know that if the illicit bond between defense counsel and defendant's wife is strong enough, there is a likelihood, so extremely difficult to prove, that his powers of persuasion, his ability as a legal logician, and his demeanor as an advocate, all declined. How much and how meaningfully we do not know.
We cannot justify leaving defendants in Hernandez' position with no remedy, which we effectively do if we require evidence of concrete acts of betrayal (other than the sexual betrayal itself). In order to be certain that we are providing justice it must be presumed that Hernandez has *54 been prejudiced because of the sexual relationship between his attorney and Esther Hernandez. We believe we are in the best of company with our conclusion. As stated in United States v. Harris, 846 F.Supp. 121, 126-27 (D.D.C.1994):
"Normally, an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no prejudicial effect on the defense. However, some claims of actual ineffectiveness warrant a limited presumption of prejudice. Prejudice is presumed if the movant `establishes that [his] attorney had an actual conflict of interest that adversely affected the attorney's performance.' Winkler v. Keane, 7 F.3d 304 (2d Cir.1993)(citing Cuyler, 446 U.S. at 350, 100 S.Ct. at 1719) (emphasis added). [FN11] `In these circumstances, no prejudice need be shown because the conflict of interest is assumed to be harmful. Legal representation which is adversely affected by actual conflicts of interest is never considered harmless error.' United States v. Tatum, 943 F.2d 370 (4th Cir.1991); United States v. Ellison, 798 F.2d 1102, 1107 (7th Cir.1986)(`This presumption of prejudice is necessary because a true conflict of interest forecloses the use of certain strategies and thus the effect is difficult if not impossible to measure.' (citations omitted))."
One of the most important dictates of our justice system is that proceedings involving criminal charges "must both be and appear to be fundamentally fair." Steinhorst v. State, 636 So.2d 498, 501 (Fla. 1994); see also Levine v. United States, 362 U.S. 610, 616, 80 S.Ct. 1038, 4 L.Ed.2d 989 (1960)(trials must reflect "the notion, deeply rooted in the common law, that justice must satisfy the appearance of justice."); Rex v. Sussex Justices, 1 K.B. 256, 259 (1924)("It ... is of fundamental importance that justice should not only be done, but should manifestly and undoubtedly be seen to be done."). The integrity of our justice system requires that all attorneys avoid even the appearance of impropriety. See State v. Fitzpatrick, 464 So.2d 1185 (Fla.1985); Colton v. State, 667 So.2d 341 (Fla. 1st DCA 1995). Justice would not appear to be done if we saddled defendants in Hernandez' position with a burden of proof that cannot be carried.[5]
The State argues that the sexual relationship may have been a "set up"; that is, that Esther Hernandez, alone or with her husband's consent, seduced Quinon for the very purpose of creating a defense in the event of a conviction. The State also argues that the Hernandez marriage was not in fact a real one, but rather one of political convenience.[6] On remand for the evidentiary hearing the State will have the opportunity to explore and present evidence as to these contentions as well as any other like possibility.
Finally, we wish to assuage the concern that we are creating an escape route whereby a defendant and his or her spouse can, by the spouse's seduction of defense counsel, create an apparent basis for reversal. We believe that most attorneys would not be interested or, out of simple moral force, would not succumb to such offerings. As for those who would consider doing so, the weight of punishment by The Florida Bar and of social disapproval should be sufficient deterrence. We also note that this case is only the second or third time that this situation has arisen on appeal nationwide.
The order summarily denying the motion for post-conviction relief is reversed and the matter is remanded for an evidentiary hearing on the motion in accordance with this opinion. On remand, if Hernandez is able to prove the alleged illicit relationship and the State is unable to establish *55 by substantial competent evidence that the relationship was a ploy on the part of Hernandez so as to create an apparent basis for reversal, or that the affair was of no consequence to all involved because of a "political marriage" with no sexual loyalty being expected, then, prejudice being presumed, the court shall grant Hernandez a new trial.
Before SCHWARTZ, C.J., and NESBITT, JORGENSON, COPE, LEVY, GERSTEN, GODERICH, GREEN, FLETCHER and SHEVIN,[1] JJ.

ON MOTION FOR REHEARING EN BANC
SCHWARTZ, Chief Judge.
Although he conceded his inability to demonstrate that the affair had affected counsel's performance in any way, Humberto Hernandez sought post-conviction relief from his misdemeanor conviction solely on the ground that his defense counsel had maintained a sexual relationship with his wife during the trial. Like the trial court, but contrary to the panel, we conclude that this position has no merit.
This result is dictated by the rule that the existence of a "possible" or "potential" personal conflict of interest between counsel and his client does not justify or permit vacating a previous conviction in the absence of a showing that the asserted conflict had an adverse effect upon the lawyer's performance. Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); Cabello v. United States, 188 F.3d 871 (7th Cir. 1999); Quince v. State, 732 So.2d 1059, 1065 (Fla.1999)(Cuyler and Dukes v. Warden, 406 U.S. 250, 92 S.Ct. 1551, 32 L.Ed.2d 45 (1972) require denial of relief if "the defendant could not identify any actual lapse in representation in the record"); Morales v. State, 513 So.2d 695 (Fla. 3d DCA 1987); People v. Singer, 226 Cal.App.3d 23, 39, 275 Cal.Rptr. 911, 921 (1990)(ample evidence of required showing of "informed speculation" that counsel's affair with client's wife adversely affected the conduct of murder case in which wife was also a suspect, supported trial judge's granting of a new trial).[2] Not only has the defendant specifically acknowledged that there is no thus-required evidence of a lapse in the conduct of the defense, the circumstances, including that the trial below resulted in a guilty verdict only as to a simple misdemeanor charge but an acquittal as to the only felony and another misdemeanor of which he was accused and Hernandez's unqualified endorsement of the results achieved by the same lawyer in a concurrent Federal prosecution, affirmatively show directly to the contrary.
For these reasons, the state's motion for rehearing en banc is granted, the panel opinion is vacated and the order under review denying post conviction trial relief is
Affirmed.
JORGENSON, COPE, LEVY, GODERICH and GREEN, JJ., concur.
FLETCHER, Judge (dissenting from the opinion and decision on motion for rehearing en banc).
I remain unpersuaded that there was no actual conflict of interest brought about by *56 attorney Quinon's utmost betrayal of his client Humberto Hernandez, and thus I believe prejudice must be presumed because of the nature of the betrayal, as set forth in the original panel opinion. As a consequence I have no choice but to dissent from the en banc opinion, which attempts to classify Quinon's cuckolding of Hernandez as a "possible" or "potential" (rather than an "actual") conflict of interest, thus requiring Hernandez to show, in addition to the conflict, that there was an "actual lapse" in Quinon's representation of Hernandez.
First, the conflict between Hernandez' interest and that of Quinon is actual. Quinon had a continuing sexual relationship with Hernandez' wife during Hernandez' trial (and afterward). His failure to reveal the relationship demonstrated his desire to continue it in secretwhich he could not have accomplished had the relationship been made known to the court. As to Hernandez, his interests included the undivided loyalty of his attorneywhich he rather obviously did not receive.
In the only other reported case of a defendant being cuckolded by his counsel,[3]People v. Singer, 226 Cal.App.3d 23, 275 Cal.Rptr. 911 (1990), the California Third District Court of Appeal, at 39-40, stated the following:
"[T]he relationship here between defense counsel and defendant's wife deprived defendant of his constitutional right to the `undivided loyalty and effort' of his attorney. [citation omitted] The validity of our adversarial system depends upon the guaranty of this `undivided loyalty and effort' for every criminal defendant. Given the instant facts [the sexual relationship between defendant's counsel and defendant's wife], a defense attorney, in the extreme, might be influenced to see his client convicted and imprisoned so that the affair can continue or remain undiscovered."
The California Court went on to add, at 40-41:
"Given an undisclosed affair between the defendant's wife and his attorney, the professional attorney-client relationship becomes tainted and interwoven with a romantic relationship. Strategic case decisions may have been made by defense counsel to ... conceal the existence of the affair at defendant's expense. Either way a defendant is prejudiced by failing to have counsel unencumbered by potential divided loyalties. `It is important [not only that] (sic) there is in fact fairness in the judicial system but that the appearance of fairness to the accused be maintained in order to sustain public confidence in the system.'" [emphasis supplied] [citation omitted]
Sex is at the top of the list of compelling emotional forces. It propelled Quinon into a conflict of interest with Hernandez with the precise effect on his representation being unknown and unknowable. Would Quinon, whose character may otherwise be sterling, hold back a bit at trial, or change his strategy,[4] in order to assure Hernandez' *57 unavailability to his wifeleaving Quinon a clear field? Those who know Quiñon may not think it likely or even possible, but countless examples exist of betrayals of duty for sexual favors to the surprise of the betrayer's friends and family. I would point out only one, known to all of us: King David's betrayal of his loyal officer, Uriah, the Hittite, who was slain on King David's orders so that King David could possess Bathsheba.[5] The difference between King David's deadly action, and a trial counsel's deliberate weakening of the client's case, lies not only in degree, but most important here, also in the likelihood of discovery. Obviously King David's action became supremely public. A trial counsel's surreptitious actions done in order to continue his sexual betrayal are not readily hunted down, as discussed in the original panel opinion. Requiring proof by a defendant that his attorney not only cuckolded him, but reduced his trial performance, leaves that defendant with an impossible task, and thus no remedy.
For the reasons stated in the original panel opinion, as further discussed herein, I dissent from the en banc opinion.
NESBITT, GERSTEN and SHEVIN, JJ., concur.
NOTES
[1] This matter comes to us as an appeal of a summary denial of Hernandez' motion for post-conviction relief pursuant to Rule 3.850, Florida Rules of Criminal Procedure. As the trial court did not hold an evidentiary hearing on the motion we assume for the purposes of this appeal that Hernandez' factual allegations in his motion are true.
[2] By citing Strickland (ineffective assistance of counsel as basis for reversal of conviction) the State has demonstrated that, contrary to its position, actions of a defense attorney, which it claims are not the actions of the State, the court, or the jury, can be the basis for relief. Cuyler v. Sullivan made it clear that when a state obtains a conviction over inadequate legal assistance by defense counsel, it is the state that unconstitutionally deprives the defendant of his liberty. That Hernandez' attorney was privately retained is of no moment. Cuyler v. Sullivan. We need not address these issues further.
[3] There are few cases that deal with such a factual situation, and none prior in Florida.
[4] People v. Jackson, 167 Cal.App.3d 829, 213 Cal.Rptr. 521 (1985).
[5] Whatever one may think of Hernandez it must be remembered that we write as well for others who in the future may find themselves so callously treated by their attorneys.
[6] Notwithstanding their nine-year marriage and two children.
[1] Judge Sorondo is recused.
[2] The burden of establishing an "adverse effect" in a "possible" conflict situation such as this is less demanding, of course, than showing that ordinary ineffective assistance of counsel was prejudicial in that the result would likely have been different in its absence. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). It may be more demanding than the perhaps distinctive situation of an "actual" conflict, which exists for example when counsel represents co-defendants with different positions in the same case. See Quince v. State, 732 So.2d at 1059 (distinguishing between "actual conflict" and "possible conflict"). In that situation the burden may be simply to show that the conflict affected counsel's performance in any, even a benign, way. See Morales, 513 So.2d at 698-99 (Schwartz, C.J., dissenting). We do not explore the possibility further because no "actual" conflict was involved here and because defendant did not satisfy even the lesser requirement.
[3] The cases cited in the en banc opinion (other than its odd reference to People v. Singer), involved no sexual relationship. Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), was concerned with multiple representations. Quince v. State, 732 So.2d 1059 (Fla.1999), involved a situation in which the defendant's trial attorney served as a special deputy sheriff. Dukes v. Warden, Conn. State Prison, 406 U.S. 250, 92 S.Ct. 1551, 32 L.Ed.2d 45 (1972), was concerned with the defendant's lawyer's representation of two girls with whom defendant had been charged in an unrelated case. Cabello v. United States, 188 F.3d 871 (7th Cir. 1999), involved an attorney who was hired by a third party to represent the defendant, that third party being a potential codefendantessentially a dual representation case. In Morales v. State, 513 So.2d 695 (Fla. 3d DCA 1987), the trial counsel's "personal concerns" caused him to labor under a conflict of interest.
[4] For example, was Hernandez' wife scheduled to testify for the defense, but not placed on the stand for a nefarious reasonwhich reason on its surface, however, appears quite acceptable?
[5] 2 Samuel 11.